## Limitations on Tax Refunds

SINON, Deputy Attorney General, January 26, 1942. —You have asked to be advised as to the time within which certain petitions for refund of taxes or other moneys must be filed with the Board of Finance and Revenue under section 503 of The Fiscal Code of April 9, 1929, P. L. 343, as last amended by the Act of August 5, 1941, P. L. 797.

The particular types of refund petitions concerning which you inquire are the following:

1. Petitions for refund of taxes or moneys paid under an act of assembly held by a court of record, other than the United States Supreme Court or the Pennsylvania Supreme Court, either to be unconstitutional or to have been erroneously interpreted.

2. Petitions for refund of taxes or moneys of the same type as those involved in a court case in which the interpretation or constitutionality of a statute has been contested, and in which judgment against the Commonwealth has been assented to in a stipulation filed by the attorney representing the Commonwealth and approved by the court.

The portion of section 503 of The Fiscal Code, which relates to petitions for refund of the above-described types, is clause (a), subdivision (4), which provides as follows:

"The Board of Finance and Revenue shall have the power, and its duty shall be,

"(*a*) To hear and determine any petition for the refund of taxes, license fees, penalties, fines, bonus, or other moneys paid to the Commonwealth and to which the Commonwealth is not rightfully or equitably entitled, and, upon the allowance of any such petition, to refund such taxes, license fees, penalties, fines, bonus, or other moneys, out of any appropriation or appropriations made for the purpose, or to credit the account of the persons, association, corporation, body politic, or public officer entitled to the refund. All such petitions must be filed with the board within two years of the payment of which refund is requested, except . . .

"(4) When any tax or other money has been paid to the Commonwealth, under a provision of an act of Assembly subsequently *held by the court of final jurisdiction to be unconstitutional, or under an interpretation of such provision subsequently held by such court to be erroneous.* In such case, the petition to the board shall be filed within five years of the payment of which a refund is requested. . . ." (Italics supplied.)

Clearly, both of the problems involved in this opinion are governed by a few key words in subdivision (4) of the foregoing statutory provisions. The answer to the first question depends upon the type of court intended by the words "the court of final jurisdiction." The answer to the second question depends upon the type of action or ruling contemplated by the legislature when it used the words "held by the court of final jurisdiction."

Turning first to a consideration of the type of court meant by section 503(4), we find that the phrase "court of final jurisdiction" is not customarily used in designating any particular class of courts. A diligent search has failed to reveal any Pennsylvania cases in which the meaning of this particular phrase has been discussed. Apparently, it has been the position of the board in the past that this phrase is equivalent to "court of last resort," or in other words, that it refers only to

the Supreme Court of the United States or the Supreme Court of Pennsylvania.

It is a matter of some difficulty to decide whether this construction by the board is correct. However, we believe it possible to arrive at the legislative intent in this respect by applying established rules of statutory construction. The Statutory Construction Act of May 28, 1937, P. L. 1019, 46 PS §501, provides, inter alia, the following rules for the construction of statutes:

"Section 33. Words and phrases shall be construed according to rules of grammar and according to their common and approved usage; . . . ."

"Section 52. In ascertaining the intention of the Legislature in the enactment of a law, the courts may be guided by the following presumptions among others:

(1) That the Legislature does not intend a result that is absurd, impossible of execution or unreasonable;

(2) That the Legislature intends the entire statute to be effective and certain; . . ."

An application of these principles to the statutory provision before us leads us to the conclusion that the legislature did not intend the words "the court of final jurisdiction" to be construed as equivalent to the phrase "court of last resort." This latter phrase has acquired a well-understood and generally-accepted meaning. In 15 C. J. 689, the phrase "court of last resort" is defined as "one from which there is no appeal," and this is the meaning generally ascribed to that phrase. Certainly it can be assumed that the legislature was acquainted with the phrase "court of last resort," and that if it had meant to refer only to the United States Supreme Court or the Pennsylvania Supreme Court, in section 503(4) of The Fiscal Code, it would have used that phrase. The fact that the legislature was familiar with the phrase "court of last resort" is clearly evidenced in the Statutory Construction Act itself, wherein the following provision appears in section 52(4) ;

"That when a *court of last resort* has construed the language used in a law, the Legislature in subsequent laws on the same subject matter intend the same construction to be placed upon such language; . . ." (Italics supplied.)

Clearly, therefore, the legislature intended something other than "court of last resort" when it used the phrase "the court of final jurisdiction." Our opinion in this respect is supported by a consideration of the reasons behind the adoption of this section, as well as the practical results of its operation.

There are several sound reasons why the period of limitation for filing petitions for refund should be lengthened from two to five years, when it appears by a court decision that a statute is unconstitutional or has been erroneously construed.

In the first place, such a court decision establishes a definite judicial precedent to guide the board in granting the refund, and there should not be as much reluctance in applying the longer statute of limitations under such circumstances as might be the case were the decision upon the refund claim solely the responsibility of the board. In the second place, so far as most State taxes are concerned, it is usually more than two years after the taxes are paid before a contest as to the validity of such payments can be carried into court and a decision obtained. Consequently, it was deemed proper to extend the period from two to five years in such cases.

With these considerations in mind, it seems entirely unlikely that the legislature intended to allow the more liberal five-year limitation period only when there has been a ruling by the Pennsylvania Supreme Court or the United States Supreme Court. There is frequently an equal need and justification for the five-year period where the case has gone no further than a subordinate State or Federal court, for even in such situations more

than two years have usually elapsed before judgment is obtained.

Moreover, when litigation involving the interpretation or construction of a State tax or revenue statute terminates in a subordinate court, it is almost invariably because the Commonwealth feels the issue was correctly decided, and does not merit an appeal. Accordingly, such a subordinate court ruling would furnish a sound and definite precedent for granting refunds, and for extending the limitation period. In any event, it is only logical to assume that the legislature did not intend to have the application of the two or five-year limitation period determined solely by whether the Commonwealth might elect to appeal from a subordinate court decision construing a revenue-raising statute.

In this connection it is also to be remembered that section 503 of The Fiscal Code is a remedial statute and, as such, should be liberally construed. In 59 C. J., p. 1107, the following statement appears:

"In construing such statutes, regard should be had to the former law, the defects or evils to be cured or abolished, or the mischief to be remedied, and the remedy provided; and they should be interpreted liberally to embrace all cases fairly within their scope, so as to accomplish the object of the legislature, and to effectuate the purposes of the statute by suppressing the mischiefs and advancing the remedy, provided it can be done by reasonable construction in furtherance of the object. . . ."

In view of the foregoing considerations, it may logically be accepted that the words "the court of final jurisdiction" were intended to mean that court of record, either appellate or subordinate, by which a particular issue has been finally determined, in the sense that there is no further action, litigation, or appeal, with respect to that issue. This construction of the term "court of final jurisdiction" is supported by the

fact that the legislature used the definite article "the" just before it, rather than the indefinite article "a". In thus using the word "the" the legislature evidently intended to designate, not a general type of court, such as a court of last resort, but *the* court which exercised final jurisdiction in the particular case involved.

The word "final" describing the word "jurisdiction" in section 503 (4) of The Fiscal Code, was undoubtedly used in the sense ascribed to it in Webster's International Dictionary (2d ed.), wherein it is stated "final" means that ". . . which ends the action or proceeding in the court that makes it, leaving nothing further to be determined by the court, or to be done except the administrative execution of the decision. . . ."

The legislature probably elected to use the word "final" in section 503 (4) of The Fiscal Code, because most court rulings, whether inferior or appellate, are not entirely decisive of the cause until a certain period has elapsed within which counsel may file appeals, petitions for reargument, petitions for rehearing, etc. Obviously the legislature did not intend the Board of Finance and Revenue to begin granting refunds on the basis of a court decision until it became final, and it accordingly used the phrase "the court of final jurisdiction."

We are convinced, therefore, that the five-year limitation period within which petitions for refunds may be filed for moneys paid under a statute held by a court of final jurisdiction to be unconstitutional or to have been erroneously applied, is available whenever there has been a final ruling by a court of record, whether such court be a subordinate court or a court of last resort.

We now turn to a consideration of your second question, which is whether a stipulation for judgment against the Commonwealth entered into by an attorney representing the taxpayer and the attorney for the Commonwealth, and filed without the approval of the

court, may ever be the basis for allowing the five-year period for filing refund petitions.

In the first place, it must be remembered that the words of section 503(4) of The Fiscal Code are "held by the court of final jurisdiction." This clearly contemplates an express judicial ruling upon the constitutionality or construction of a statute. In order for the ruling to be made the basis of other refunds by the Board of Finance and Revenue, it must obviously contain a statement pointing out the respects in which the statute is unconstitutional or has been erroneously applied. Stipulations for judgment filed in cases involving State revenues almost invariably are little more than computations of the amount due and contain no order of court or approval of the stipulations by the court. There is no discussion of the constitutionality or construction of the statute involved. Therefore, we do not feel that a case terminated by such a stipulation is one which can properly be made the basis for permitting the five-year limitation period.

An analogy supporting this conclusion might be found in the law of stare decisis. In this respect it is stated in 21 C. J. S. 383, as follows:

"A consent decree cannot be considered a precedent in a later case; nor can a mere concession of counsel be regarded as a judicial establishment of the point conceded."

Similarly, since the five-year limitation period was only intended to be available where there is a court ruling to serve as a precedent, we do not feel that a stipulation of counsel should be considered as equivalent to a court ruling.

It is our opinion and you are accordingly advised:

1. That the words "the court of final jurisdiction" in section 503(4) of The Fiscal Code of April 9, 1929, P. L. 343, as last amended by the Act of August 5, 1941, P. L. 797, 72 PS §503, do not mean "court of last resort". Therefore, petitions for refunds of taxes or other moneys may be filed within five years of the pay-

ment thereof in any case where such funds have been paid to the Commonwealth under a statute held to be unconstitutional, or to have been erroneously interpreted, by a court of record in a decision or ruling which has become final.

2. That a judgment against the Commonwealth entered by stipulation of counsel in a case involving the constitutionality or interpretation of a revenue statute is not sufficient to extend the period for filing refund petitions from two to five years.